```
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
         APPELLATE DIVISION
```

PAUL ARCHER,                          )
                                      )
            Appellant,                )
                                      )
       v.                             ) D.C. Civ. App. No. 2006-88
                                      ) re: Super. Ct. Civ. No. 123/2003
CARIBBEAN AUTO MART, INC.,            )
                                      )
            Appellee.                 )
                                      )

On Appeal from the Superior Court of the Virgin Islands
   Superior Court Judge: The Honorable Brenda J. Hollar
              Considered: November 2, 2012
                  Filed: August 28, 2017

BEFORE: CURTIS V. GÓMEZ, Judge of the District Court of the Virgin Islands; WILMA A. LEWIS, Chief Judge of the District Court of the Virgin Islands; and HAROLD W. WILLOCKS, Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.

APPEARANCES:

Vincent Colianni, II, Esq.
Colianni & Colianni
St. Croix, VI
    For the Appellant,

Leslie A. Kelley, Esq.
Nichols Newman Logan D'Eramo & Grey, P.C.
St. Croix, VI
    For the Appellee.

**MEMORANDUM OPINION**

**PER CURIAM**

Paul Archer appeals the order of the Superior Court of the Virgin Islands granting summary judgment against him and in favor of Caribbean Auto Mart, Inc. For the reasons stated herein, we affirm the lower court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In or about October of 2002, Dothlyn Davis ("Davis") submitted a complaint to the appellee, Caribbean Auto Mart, Inc. ("CAM"), about one of its then-employees, the appellant Paul Archer ("Archer"). Davis claimed that she had gone to CAM's car dealership in St. Thomas seeking to purchase a used SUV. At the CAM car dealership, she was assisted by Archer. (J.A. at 4, 35-36.)

Despite Archer's assistance, Davis found no car in CAM'S inventory that she liked. Davis claims that at this point Archer told her he could put her in touch with another CAM employee who was interested in trading a used SUV. Davis agreed to this arrangement. Shortly thereafter, Davis was contacted by an individual who identified himself as Elroy Carey ("Carey"), and who claimed to be a CAM employee.[1] After several exchanges, Davis

---

[1] It is not clear from the record below whether Carey was ever in fact an employee of CAM.

ultimately agreed to purchase a car in Florida for $8,200, which Carey would arrange to have transported to St. Thomas. Davis gave the $8,200 to Carey, although at the time she believed she was purchasing the car from CAM. (J.A. 36-44.)

When Davis received the car, it was a different color and a different model than Carey had promised. It also had serious mechanical problems and other issues. Davis attempted to get a refund of the purchase price from Archer, to no avail. Archer did, however, offer to resell the car. Specifically, he told Davis that if she parked the car near the CAM dealership, he would show it to potential CAM customers. (J.A. 44, 52-59.)

The car went unsold, and Davis received no refund, for several months. In or about October of 2002, the transmission in the car broke down and the car became inoperable. Davis then contacted CAM in an effort to get it repaired. (J.A. 70-77.)

The president of CAM, William Lambert ("Lambert"), responded to Davis's inquiry. Lambert told Davis that CAM had never had her car in its inventory, and had never sold her that car. Davis then told him how she had acquired the car, and Lambert agreed to meet with her. After meeting with Davis, Lambert questioned Archer about the transaction, in the presence of Davis. Archer denied everything, calling Davis a "liar" who was out to get money from CAM. (J.A. 77-90.) Lambert found Davis's allegations

"creditable" and Archer's behavior "evasive and uncooperative." (J.A. 16.) Lambert then fired Archer.

On March 6, 2003, Archer initiated the underlying action in the Superior Court of the Virgin Islands. Archer's one-count complaint asserted a violation of the Virgin Islands Wrongful Discharge Act. On April 7, 2006, the Superior Court of the Virgin Islands entered summary judgment in favor of CAM and against Archer.

On May 12, 2006, thirty-five days later, Archer filed his notice of appeal. This Court issued a briefing schedule and all parties timely submitted briefs.

On November 21, 2008, this Court dismissed this matter for want of jurisdiction, on the ground that Archer's notice of appeal was untimely under Virgin Islands Rule of Appellate Procedure 4(a) ("Rule 4(a)").

Archer appealed this dismissal, and the United States Court of Appeals for the Third Circuit reversed. The Third Circuit held that unlike Rule 4(a)'s federal analogue, Rule 4(a) is not a prerequisite to jurisdiction. The Third Circuit thus remanded the matter to this Court for a determination of whether the delay in filing the notice of appeal was excusable under Virgin Islands Rule of Appellate Procedure 5, and for any further proceedings in light of that determination.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands.[2] See Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).

### B. Standard of Review

We exercise plenary review over a Superior Court's grant of summary judgment. *Topa Equities (V.I.), Ltd. v. Bared Jewelers of the V.I., Inc.*, 332 F. Supp. 2d 814, 816 (D.V.I. App. Div. 2004). Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine [dispute] of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 216 (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000)).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest

---

[2] In 2005, the Territorial Court of the Virgin Islands was renamed the Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004).

upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the [court]'s function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, the court draws all reasonable inferences in favor of the opposing party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

#### A. Timeliness

Virgin Islands Rule of Appellate Procedure 5(a)(8) provides, in pertinent part,

> The Appellate division, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than thirty days after the expiration of the time prescribed [for filing a notice of appeal].

VIRAP 5(a)(8).

The Supreme Court's ruling in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380

(1993), established an equitable approach to the "excusable neglect" determination. *Ragguette v. Permier Wines & Spirits*, 691 F.3d 315, 319 (3d Cir. 2012). As the Court of Appeals for the Third Circuit has explained,

> While a court must still take into account all of the relevant circumstances, *Pioneer* provides four factors to consider when making this equitable determination: (1) the danger of prejudice to the non-movant; (2) the length of the delay and the impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Id.* (citing *Pioneer*, 507 U.S. at 395) (internal quotation marks and citation omitted).

Here, Archer did not file a motion for extension of time. However, Archer did file a notice of appeal shortly after the deadline. This, at a minimum, should have put CAM on notice that Archer intended to appeal. Moreover, CAM did not object to the untimely filing, but instead submitted its brief on the merits. Thus, we cannot say that CAM suffered significant prejudice by Archer's untimeliness.

The delay here was also brief--just four days beyond the deadline.[3] The delay did not significantly impact these

---

[3] Thirty days from April 7, 2006, actually fell on May 7, 2006. May 7, 2006, was a Sunday. The Virgin Islands Rules of Appellate Procedure provide that, in calculating when deadlines fall, "[t]he least day of the period so computed shall be included, unless it is . . . a Sunday, . . . in which event the period runs until the next day . . . ." VIRAP 16(b). The next day applicable for purposes of computation of time was Monday, May 8, 2006. Thus, the notice of appeal was filed only four days late.

proceedings, as the Court promptly issued a briefing schedule and the parties thereafter timely submitted their briefs. Thus, the second *Pioneer* factor counsels in favor of permitting this appeal to be heard.

The alleged reason for the delay is that counsel for Archer "did not receive notice of the judgment until April 12, 2006." (Decl. of Vincent Colianni II, Esq. ¶ 2.) Counsel further avers that his assistant mistakenly marked the deadline for filing the notice of appeal as May 12, 2006. (Decl. of Vincent Colianni, Esq. ¶ 3.) "'Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" . . . is a somewhat "elastic concept," and is not limited strictly to omissions caused by circumstances beyond the control of the movant.'" *Ragguette*, 691 F.3d at 324 (quoting *Pioneer*, 507 U.S. at 392). The Court of Appeals has identified five non-exclusive factors to guide courts in determining whether an attorney's inadvertence is inexcusable:

> (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted

>despite counsel's substantial good faith efforts toward compliance.

*Consol. Freightways Corp. of Del. v. Larson*, 827 F.2d 916, 919 (3d Cir. 1987).

Here, counsel's excuse reflects an error in construing the Virgin Islands Rules of Appellate Procedure in that counsel did not calculate the appeal period from the "entry of the final order into the docket." V.I.R. App. P. 5(a)(9). This excuse is easily manufactured and difficult to verify, since only counsel and his office are aware of the date that counsel received notice of the judgment. Moreover, a discrepancy between the date judgment is issued and the date notice is received is certainly foreseeable, and counsel could have taken steps to prevent such a problem.

However, we cannot say that counsel's error was a product of a complete lack of diligence. Counsel was clearly aware of the relevant rules, as he filed a notice of appeal within thirty days of what he or his office believed to be the date of judgment. Counsel thereafter timely submitted his briefs in compliance with the Court's scheduling order. These actions show a substantial, good faith effort by counsel to comply with the rules. Thus, we cannot say that the third *Pioneer* factor counsels in favor of dismissal.

Lastly, as discussed immediately above, it does not appear that Archer or his counsel acted in bad faith. Counsel's inadvertence appears to have been an innocent one. Archer and his counsel have otherwise complied with this Court's orders in this case. The fourth *Pioneer* factor thus weighs in favor of this case being heard.

Therefore, upon consideration of the four *Pioneer* factors, together with the minimal prejudice caused by the delay, the short period of the delay, and the relatively innocent nature of counsel's inadvertence, we find that Archer's untimely filing of his notice of appeal does not warrant dismissal. Accordingly, we will now address the merits of his appeal.

B. <u>Summary Judgment</u>

CAM was granted summary judgment in its favor on the sole count of the complaint, alleging a violation of the Virgin Islands Wrongful Discharge Act (the "VIWDA").

The VIWDA "establishes a presumption that an employee is 'wrongfully discharged' if the discharge is for a reason other than one of the nine (9) enumerated in section 76(a) [of the VIWDA] as grounds for discharge." *Hess Oil V.I. Corp. v. Richardson*, 894 F. Supp. 211, 216 (D.V.I. 1995). Section 76(a) of the VIWDA provides, in pertinent part, that "an employer may dismiss any employee . . . (1) who engages in a business which

*Archer v. Caribbean Auto Mart, Inc.*
D.C. Civ. App. No. 2006-88
Memorandum Opinion
Page 11

conflicts with his duties to his employer or renders him a rival of his employer; [or] . . . (8) who is dishonest." V.I. CODE ANN. tit. 24, § 76(a).

CAM argues that Archer was permissibly discharged for engaging in a conflicting business by facilitating the private sale of a car to a potential CAM customer. *See* V.I. CODE ANN. tit. 24, § 76(a)(1). CAM further argues that Archer, when questioned about this, denied it and was "evasive and uncooperative," and was therefore also permissibly discharged for being dishonest. *See* V.I. CODE ANN. tit. 24, § 76(a)(8).

In support of its motion for summary judgment, CAM offered the affidavit of Lambert and the deposition testimony of Davis. Lambert avers that he spoke with Davis at length, and determined that the car she had purchased was not sold to her by CAM. (J.A. 16.) Lambert further avers that when questioned about it, Archer was "evasive and uncooperative," and that on this basis he "determined that Davis' allegations against Archer were creditable . . . ." (J.A. 16.)

In her deposition, Davis testified at length about how she came to acquire a car from Carey. She explained that she had visited CAM to purchase a car, and when she was unhappy with the cars that CAM had available for sale, Archer suggested a private sale. (J.A. 31-38.) She further testified that Archer helped to

arrange for her to purchase a car through Carey, to whom she paid $8,200. (J.A. 38-48.) When the car arrived and Davis was displeased, Archer offered to resell it by showing it to potential CAM customers. (J.A. 66-71.)

This evidence shows that Archer diverted potential business away from CAM by arranging for a private sale of a car to a potential CAM customer. Moreover, Archer then attempted to resell Davis's car to another potential CAM customer. This evidence is thus sufficient to satisfy CAM's initial burden to show that there is no genuine issue of material fact that Archer was permissibly discharged.

The burden now shifts to Archer to show that there is a genuine issue for trial. To that end, Archer argues that Davis's testimony is simply not credible. Specifically, Archer points to the fact that Davis testified that she had the car "for close to a year" before she complained to Lambert. (J.A. 90.) Archer argues that it is simply incredible that she would have waited that long to complain about the car.

However, Davis did not wait a year to complain about the car. In fact, she states she complained immediately upon receiving the car to both Archer and Carey. (J.A. 56-58.) Carey and Archer then promised to refund her money, or resell the car. Davis remained in contact with them for several months in an

effort to get her money back or resell the car. They continued to promise her that she would get her money back, one way or another. (J.A. 58-70.) Finally, when the car became inoperable, she went to CAM to see about getting it repaired, and at that time spoke with Labmert. (J.A. 77.)

Archer also points to Lambert's affidavit, in which he states that Davis complained about the car "several weeks" after she come to CAM to buy a car. (J.A. 15.) Aside from this minor inconsistency, however, Lambert and Davis's accounts are virtually identical in every respect. Moreover, the precise time frame in which the events described by Davis transpired is not material--the issue instead is whether her complaint was an adequate basis on which to terminate Archer.[4] This discrepancy, without more, is simply not sufficient for this Court to conclude that a genuine dispute of material fact exists.

Archer has not otherwise put forward any evidence of specific facts showing a material dispute for trial. It is well-established that the non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). Thus, Archer has failed to discharge his burden, and summary judgment was properly granted in favor of CAM.

---

[4] "Material" means "significant; essential." Black's Law Dictionary 998 (8th ed. 2004).

## IV. CONCLUSION

The evidence adduced before the Superior Court of the Virgin Islands was sufficient to show there was no genuine dispute of material fact and that CAM was entitled to judgment as a matter of law. Accordingly, finding no error in the judgment entered below, we affirm.